IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

05 SEP 29 AM 11:51

UNITED STATES OF AMERICA,

 Plaintiff,

v.

GRAND TRUNK WESTERN RAILROAD INC.; KRAFT FOOD NORTH AMERICA, INC. (f/k/a/ GENERAL FOODS CORPORATION); EMHART INDUSTRIES, INC. (USM); HOOVER UNIVERSAL, INC. (AE DIVISION); THE O'BRIEN CORPORATION; FEDERAL-MONGUL CORPORATION (NATIONAL SEAL); AVENTIS CROPSCIENCE USA, INC. (RESPONDING FOR RHONE-POULENC BASIC AND CHEMICALS CO. (f/k/a/ STAUFFER CHEMICAL CO.); GENERAL ELECTRIC COMPANY.; FORT JAMES OPERATING COMPANY (RESPONDING FOR JAMES RIVER CORPORATION OF VIRGINIA; ARK-WRIGHT, INC.; DOUGLAS COMPONENTS; EATON CORPORATION; METALDYNE MACHINING AND ASSEMBLY MANUFACTURING COMPANY (ON BEHALF OF EDON MACHINE); RIEKE CORPORATION; HONEYWELL INTERNATIONAL, INC. (AS SUCCESSOR TO SINCLAIR AND VALENTINE COMPANY, INC.); THE LEISURE GROUP; FORD MOTOR COMPANY; CLARK EQUIPMENT COMPANY; INX INTERNATIONAL INK CO. (f/k/a/ ACME PRINTING COMPANY); FERRO CORPORATION; TOMKINS INDUSTRIES, INC. (f/k/a/ BATH FIXTURES CORPORATION AND PHILLIPS INDUSTRIES, INC.); LASCO INDUSTRIES; HAYES-LEMMERZ INTERNATIONAL-OHIO INC. (f/k/a/ MOTOR WHEEL CORPORATION); MILES, INC.; ACHESON INDUSTRIES, INC.; E.I. duPONT de NEMOURS; KYSOR INDUSTRIAL CORPORATION; GENERAL ALUMINUM (CAREFREE ALUMINUM PRODUCTS); KENNEDY MANUFACTURING CO.; UIS, INC. (f/k/a/ INTERKAL, INC.); AND THE VALSPAR CORPORATION,

 Defendants.

CIVIL ACTION NO.

1:05CV0672

Gordon J. Quist
U.S. District Judge

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), and by and through its undersigned attorneys, files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607. The United States seeks to recover costs and accrued interest incurred by U.S. EPA and the United States Department of Justice for response actions at the Verona Well Field Superfund Site ("Site") in Battle Creek, Michigan. The United States also seeks continued performance of remedial work by the Defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended). Finally, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States seeks a declaratory judgment that Defendants are jointly and severally liable for all future response costs that are incurred by the United States in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the claims arose and the threatened or actual releases of hazardous substances occurred in this district.

## DEFENDANTS

4.      The Defendants are: Grand Trunk Western Railroad Inc.; Kraft Food North America, Inc. (f/k/a/ General Foods Corporation); Emhart Industries, Inc. (USM); Hoover Universal, Inc. (AE Division); The O'Brien Corporation; Federal-Mongul Corporation (National Seal); Aventis Cropscience USA, Inc. (responding for Rhone-Poulenc Basic and Chemicals Co. (f/k/a/ Stauffer Chemical Co.); General Electric Company; Fort James Operating Company (responding for James River Corporation of Virginia; Ark-Wright, Inc.; Douglas Components; Eaton Corporation; Metaldyne Machining and Assembly Manufacturing Company (on behalf of Edon Machine); Rieke Corporation; Honeywell International, Inc. (as successor to Sinclair and Valentine Company, Inc.); The Leisure Group; Ford Motor Company; Clark Equipment Company; INX International Ink Co. (f/k/a/ Acme Printing Company); Ferro Corporation; Tomkins Industries, Inc. (f/k/a/ Bath Fixtures Corporation and Phillips Industries, Inc.); Lasco Industries; Hayes-Lemmerz International-Ohio Inc. (f/k/a/ Motor Wheel Corporation); Miles, Inc.; Acheson Industries, Inc.; E.I. duPont de Nemours; Kysor Industrial Corporation; General Aluminum (Carefree Aluminum Products); Kennedy Manufacturing Co.; UIS, Inc. (f/k/a/ Interkal, Inc.); and the Valspar Corporation.

5.      Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6.      Each of the Defendants arranged for the disposal of hazardous substances owned or possessed by it at the Site, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

7.      Defendant Grand Trunk Western Railroad, Inc. owned or operated the Paint

Shop and Annex portions of the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

## THE VERONA WELL FIELD SUPERFUND SITE

8. The Site is located in Battle Creek, Michigan and includes an area that is the primary source of drinking water for the City of Battle Creek (the "Well Field"). The Site encompasses four areas: the Thomas Solvent Raymond Road Facility ("Raymond Road Facility"), the Annex, the Paint Shop, and the Well Field. The Raymond Road Facility, Annex and Paint Shop are all locations where hazardous substances, particularly solvents, were used and released into the surrounding area. Contaminated groundwater from these three areas migrated to the Well Field, the portion of the Site from which the City of Battle Creek draws its drinking water.

9. From 1963 through 1984, the Thomas Solvent Company's ("Thomas Solvent") primary business was the sale and distribution of chemicals for various commercial and industrial uses. Its principal place of business was the Raymond Road Facility, which consisted of a warehouse, a dock used for storing drums, an area used for mixing chemicals, and underground storage tanks ranging between 4,000 and 15,000 gallons in capacity. Thomas Solvent sold drums of product containing hazardous substances to various commercial customers from the Raymond Road Facility and charged a drum deposit to its customers when the full drum was delivered to the customer. Once a customer had used the drummed product, Thomas Solvent would pick up the customer's empty or used drums, which generally contained some residue of the product that had been sold to the customer, and would then return the drums to the Raymond Road Facility, with the customer receiving a credit for the drum's return in the amount of the deposit. Between 1963 and

Complaint, *United States v.*
*Grand Trunk Western Railroad, Inc., et al.*  4

1980, Thomas Solvent cleaned the returned drums at the Raymond Road Facility. In that process, any remaining product was dumped onto the soils at the Site.

10. At the Annex, Thomas Solvent unloaded from rail cars and stored temporarily drummed product containing hazardous substances received from its customers.

11. From 1981-1982, 27 of the nearby 30 Verona Well Field City production wells, as well as 80 private residential wells, were found to be contaminated by a number of hazardous substances. The sources of contamination were the two facilities operated by Thomas Solvent (the Raymond Road Facility and the Annex) and a the Paint Shop, which was owned and operated by the Grand Trunk Western Railroad, Inc. The groundwater contamination referenced in this Paragraph resulted from leaking containers and underground storage tanks, spillage, and direct dumping.

12. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, U.S. EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 8, 1982, 48 Fed. Reg. 40658-40682.

13. U.S. EPA performed the remedial action at the Raymond Road Facility with the exception of ongoing operation and maintenance being performed by the State of Michigan.

14. On February 19, 1992 and May 5, 1992, U.S. EPA issued administrative orders pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, to various Defendants, directing them to perform the remedial action chosen by U.S. EPA at the Annex, Paint Shop and Well Field. The Defendant recipients are currently implementing the work directed by the orders.

15. U.S. EPA has incurred response costs to mitigate the releases or threats of

releases of hazardous substances at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604.

## FIRST CLAIM FOR RELIEF
(Liability for Past and Future Response Costs)

16. Paragraphs 1 through 15 are realleged and incorporated herein by reference.

17. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) provides, in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section . . .
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . .
>
> from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan. . . .
>
> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned.

18. Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides in pertinent part:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further

response costs or damages.

19. There have been "releases" or the threat of "releases" of "hazardous substances" into the environment at the Site, within the meaning of Sections 101(22) and 101(14) of CERCLA, 42 U.S.C. § 9601(22), (14).

20. As a result of releases or threatened releases of hazardous substances at the Site, the United States has undertaken "response" actions within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), and the United States has incurred response costs in connection with such response actions.

21. The Site is, and was at all times relevant to this Complaint, a "facility" within the meaning and scope of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

22. "Disposal" of "hazardous substances" within the meaning and scope of Sections 101(29) and (14) of CERCLA, 42 U.S.C. § 9601(29), (14) occurred at the Site during the period of Thomas Solvent's operations at the Site, and during the period of Grand Trunk Western Railroad Inc.'s operations at the Site.

23. The response actions taken and the costs incurred by the United States in connection with the Site are not inconsistent with the National Contingency Plan, which was promulgated under CERCLA Section 105(a), 42 U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300.

24. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are jointly and severally liable to the United States for response costs incurred by the United States in connection with the Site, including enforcement costs, and for interest thereon.

25. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendants are jointly and severally

Complaint, *United States v.*
*Grand Trunk Western Railroad, Inc., et al.*          7

liable for such further response costs as the United States may incur in connection with the Site.

## SECOND CLAIM FOR RELIEF
Administrative Order – CERCLA Section 106

26. Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27. CERCLA Section 106(a), 42 U.S.C. § 9606(a), provides that the President may direct the Attorney General of the United States to secure such relief as may be necessary to abate a condition that may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility. Section 106 further provides that the President may take other action under Section 106, including issuing such orders as may be necessary to protect public health and welfare and the environment.

28. On February 19, 1992 and May 5, 1992, U.S. EPA issued administrative orders pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, to various Defendants, requiring them to undertake specified removal action activities at the Site.

29. In its administrative orders, U.S. EPA made findings of fact, including that hazardous substances are present at the Site, and that the release and threat of release of one or more hazardous substances at or from the Site may present an imminent and substantial endangerment to the public health, welfare, or the environment within the meaning of Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

30. Pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), the Defendant recipients of the administrative orders referenced in Paragraph 28 are liable to the United States for taking such actions as may be necessary to abate the imminent and substantial

endangerment to the public health, welfare or the environment caused by the release or threatened release of hazardous substances at or from the Site.

31. Pursuant to CERCLA Section 106, 42 U.S.C. § 9606, the Defendant recipients of the administrative orders referenced in Paragraph 28 should be ordered to continue performance of remedial work at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1. Order Defendants, jointly and severally, to reimburse the United States for response costs incurred as a result of response actions taken at the Site;

2. Enter a declaratory judgment that Defendants are jointly and severally liable for future response costs incurred by the United States in connection with the Site;

3. Order Defendants to continue performance of remedial work at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended).

4. Award the United States its costs in this action; and

5. Award any further relief as the Court deems just and proper.

Respectfully submitted,

*Kelly A. Johnson*
KELLY A. JOHNSON
Acting Assistant Attorney General
Environment and Natural
Resources Division

_[signature]_
ROBERT W. DARNELL
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-4162


MARGARET M. CHIARA
United States Attorney
Western District of Michigan

_[signature]_
W. FRANCESCA FERGUSON
Assistant United States Attorney
Western District of Michigan
330 Ionia Ave., Suite 501
Grand Rapids, MI 49503


OF COUNSEL:
PETER FELITTI
Associate Regional Counsel
U.S. Environmental Protection
  Agency-Region 5
77 West Jackson Blvd.
Chicago, IL 60604