## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

                                  CIVIL ACTION NO. 1:05-CV-0672

    v.

GRAND TRUNK WESTERN RAILROAD
INCORPORATED; KRAFT FOODS GLOBAL, INC.
(f/k/a/ KRAFT FOODS NORTH AMERICA, INC. f/k/a/
GENERAL FOODS CORPORATION);
EMHART INDUSTRIES, INC.;
HOOVER GROUP, INC. (AS SUCCESSOR TO
HOOVER UNIVERSAL, INC.);
THE O'BRIEN CORPORATION;
BAYER CROPSCIENCE, INC., (f/k/a/ AVENTIS
CROPSCIENCE USA, INC. [RESPONDING FOR
RHONE-POULENC BASIC AND CHEMICALS CO.
{f/k/a/ STAUFER CHEMICAL CO.}]; GENERAL ELECTRIC
COMPANY; FORT JAMES OPERATING
COMPANY (RESPONDING FOR JAMES RIVER
CORPORATION OF VIRGINIA); ARK-WRIGHT, INC.;
EATON CORPORATION; METALDYNE CORPORATION
(ON BEHALF OF EDON MACHINE); RIEKE CORPORATION;
HONEYWELL INTERNATIONAL, INC. (AS SUCCESSOR
TO SINCLAIR AND VALENTINE COMPANY, INC.);
THE LEISURE GROUP, INC.; FORD MOTOR COMPANY;
CLARK EQUIPMENT COMPANY; INX INTERNATIONAL
INK COMPANY (f/k/a/ ACME PRINTING INK COMPANY);
FERRO CORPORATION; TOMKINS INDUSTRIES, INC.
HLI OPERATING COMPANY, INC.(f/k/a/ MOTOR
WHEEL CORPORATION); BAYER CORPORATION.;
ACHESON INDUSTRIES, INC.; E.I. duPONT
de NEMOURS AND COMPANY; KYSOR INDUSTRIAL
CORPORATION; UIS, INC.
(f/k/a/ INTERKAL, INC.); AND THE VALSPAR
CORPORATION,

            Defendants.
_____/

# REMEDIAL ACTION CONSENT DECREE

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 3 |
| III. | PARTIES BOUND | 4 |
| IV. | DEFINITIONS | 4 |
| V. | GENERAL PROVISIONS | 9 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS | 13 |
| VII. | REMEDY REVIEW | 19 |
| VIII. | QUALITY ASSURANCE, SAMPLING, and DATA ANALYSIS | 21 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 23 |
| X. | REPORTING REQUIREMENTS | 26 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 28 |
| XII. | PROJECT COORDINATORS | 31 |
| XIII. | ASSURANCE OF ABILITY TO COMPLETE WORK | 32 |
| XIV. | CERTIFICATION OF COMPLETION | 34 |
| XV. | EMERGENCY RESPONSE | 37 |
| XVI. | REIMBURSEMENT OF RESPONSE COSTS | 38 |
| XVII. | INDEMNIFICATION AND INSURANCE | 41 |
| XVIII. | FORCE MAJEURE | 44 |
| XIX. | DISPUTE RESOLUTION | 46 |
| XX. | STIPULATED PENALTIES | 50 |
| XXI. | COVENANTS NOT TO SUE BY PLAINTIFF | 55 |
| XXII. | COVENANTS BY SETTLING DEFENDANTS | 58 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 61 |
| XXIV. | ACCESS TO INFORMATION | 63 |
| XXV. | RETENTION OF RECORDS | 64 |
| XXVI. | NOTICES AND SUBMISSIONS | 66 |
| XXVII. | EFFECTIVE DATE | 68 |
| XXVIII. | RETENTION OF JURISDICTION | 69 |
| XXIX. | APPENDICES | 69 |
| XXX. | COMMUNITY RELATIONS | 69 |
| XXXI. | MODIFICATION | 69 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 70 |
| XXXIII. | SIGNATORIES/SERVICE | 71 |
| XXXIV. | FINAL JUDGMENT | 72 |

## I. BACKGROUND

A. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B. The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Verona Well Field Superfund Site in Battle Creek, Michigan, together with accrued interest; and (2) continued performance of Work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C. Except for Grand Trunk Western Railroad Incorporated, the defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

D. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 8, 1982, 48 Fed. Reg. 40658-40682.

E. In response to a release or a substantial threat of a release of a hazardous substance at or from the Site, EPA commenced in March 1986, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

-1-

Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

F. EPA completed a Remedial Investigation ("RI") Report in August 1990, and EPA completed a Feasibility Study ("FS") Report on February 15, 1991.

G. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on February 15, 1991, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

H. The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on June 28, 1991 on which the State had a reasonable opportunity to review and comment and on which the State has given its concurrence. The ROD included a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA. A copy of the ROD is attached hereto as Appendix A.

I. On February 19, 1992, EPA issued a Unilateral Administrative Order (EPA Docket No. V-W-92-C-138) to Owner Settling Defendant Grand Trunk Western Railroad Incorporated to design and implement the ROD for the Paint Shop, marshalling yard and Verona Well Field portions of the Site.

J. On May 5, 1992, EPA issued a Unilateral Administrative Order (EPA Docket No. V-W-92-C-153) to various Settling Defendants to design and implement the ROD for the Annex and Verona Well Field portions of the Site.

-2-

K. On September 29, 2003, the EPA issued an Explanation of Significant Differences ("ESD") which modified the cleanup levels for contaminants of concern at the Site and dealt with other Site matters.

L. Based on information presently available to the EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

M. Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and ESD, and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

N. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, and implementation of this Consent Decree will enhance and expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent

-3-

Decree.

## III. PARTIES BOUND

2. This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3. Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning

-4-

assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § § 9601 *et seq*.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 111.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Environmental Monitoring" shall mean data collected to assess achievement of groundwater and soil performance standards, or to assess protection of the city well-field.

"Explanation of Significant Differences" or "ESD" shall mean the September 29, 2003 document that modified the June 28, 1991 Record of Decision, a copy of which is attached hereto as Appendix B.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and

-5-

indirect costs, that the United States incurs after the date of lodging of this decree in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections: IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV (Emergency Response), and Paragraph 84 of Section XXI (Covenants Not to Sue by Plaintiff).

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"MDEQ" shall mean the Michigan Department of Environmental Quality and any successor departments or agencies of the State.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, monitor, and evaluate the effectiveness of the Remedial Action as required under the Operation and Maintenance Manual, Long-term Monitoring Plan, Quality Assurance Project Plan, and Health and Safety Plan, and other plans approved or developed by EPA pursuant to this

-6-

Consent Decree and the Statement of Work (SOW).

"Owner Settling Defendant" shall mean the Grand Trunk Western Railroad Incorporated.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or a letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through the date of lodging of this decree, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. §9607(a) through such date.

"Performance Standards" shall mean the cleanup standards set forth in Table 1 of the ESD and other measures of achievement of the goals of the Remedial Action, set forth in the ROD, the ESD and the SOW and any modified standards established by EPA pursuant to the "technical impracticability" provision of Paragraph 14.

"Plaintiff" shall mean the United States.

"Remedial Action" shall mean those activities including monitoring to assess achievement of Performance Standards, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD and ESD.

"Record of Decision" or "ROD" shall mean the EPA Record of Decision signed on June 28, 1991, by the Regional Administrator, EPA Region 5, or his/her delegate, and all attachments thereto, as revised by any EPA-issued ROD Amendment or Explanation of Significant Differences.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Defendants listed in the caption of the Consent Decree.

-7-

County, Michigan, including the Source Areas.

"Source Areas" shall mean the areas from which Site contamination emanates. These areas are commonly known as the Annex, the Raymond Road Facility and the Paint Shop, and their boundaries are generally defined in Appendix D.

"State" shall mean the State of Michigan.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix C to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants and approved by the EPA to supervise and direct the implementation of the Work under this Consent Decree. Presently the Supervising Contractor is Progressive Engineering & Construction, Inc.

"Unilateral Administrative Order #1" or "UAO #1" shall mean the CERCLA § 106 Administrative Order dated February 19, 1992, Docket No. V-W-92-C-138, directing Settling Defendant to undertake remedial design and remedial action at the Paint Shop, marshalling yard, and Verona Well Field portion of the Site.

"Unilateral Administrative Order #2" or "UAO #2" shall mean the CERCLA § 106 Administrative Order dated May 5, 1992, Docket No. V-W-92-C-153, directing one or more of the Settling Defendants to undertake remedial design and remedial action at the Annex and Verona Well Field portions of the Site.

"UAOs" shall mean UAO #1 and UAO #2.

"United States" shall mean the United States of America.

-8-

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of

CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101 (33), 42

U.S.C. §9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. §6903(27).

"Work" shall mean all activities Settling Defendants are required to perform under this

Consent Decree, except those required by Section XXV (Retention of Records).

"Work Plan" shall mean those documents prepared by the Settling Defendants and

approved by EPA which set forth how the Settling Defendants will perform their obligations

under the Consent Decree.

## V. GENERAL PROVISIONS

5.    Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are to protect public

health, or welfare, or the environment at the Site by the continued implementation of the Work

required by this Consent Decree, to reimburse response costs of Plaintiff, and to resolve claims of

Plaintiff against Settling Defendants, as provided in this Consent Decree.

6. The UAOs shall be superseded and terminated upon the entry of this Consent Decree

by the Court. If the Court denies any motion to enter this Consent Decree, such denial shall not

affect in any way the Parties' rights and obligations under the UAOs, including, but not limited

to, EPA's rights to enforce the UAOs and Settling Defendants' duty to comply with the UAOs.

Any documents that are required to be submitted under this Consent Decree that have been

submitted by Settling Defendants pursuant to the UAOs need not be resubmitted after the date

that this Consent Decree supersedes the UAOs, unless EPA determines that such submittal is inadequate. Upon entry of this Consent Decree, all approved submittals or established deadlines existing under the UAOs shall become enforceable under this Consent Decree.

7.    Commitments by Settling Defendants

a.    Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the ESD, the SOW and all work plans or other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree. Settling Defendants shall also reimburse the United States for Future Response Costs as provided in this Consent Decree.

b.    The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

8.    Compliance With Applicable Law

All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD, ESD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered consistent with the NCP.

9.    Permits.

-10-

a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

10. Notice to Successors-in-Title.

a. With respect to any property owned or controlled by Owner Settling Defendant that is located within the Site, within 15 days after the entry of this Consent Decree, Owner Settling Defendant shall submit to EPA for review and approval a notice to be filed with the Register of Deeds, Calhoun County, State of Michigan, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site as identified in the ROD on June 28, 1991, and that Settling Defendants have entered into a Consent Decree requiring implementation of the remedy. Such notice(s) shall also identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the court. Owner Settling Defendant shall record with the Register of Deeds the notice(s) within 10 days of EPA 's approval of the

-11-

notice(s). Owner Settling Defendant shall provide EPA with a certified copy of the recorded notice(s) within 10 days after receiving a copy of the recorded notice(s) from the Register of Deeds.

b. Until EPA issues a Certification of Completion with regard to the Annex or Paint Shop, at least 30 days prior to the conveyance of any interest in property located within the Annex or Paint Shop including, but not limited to, fee interests, leasehold interests, and mortgage interests, Owner Settling Defendant shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls). At least 30 days prior to such conveyance, Owner Settling Defendant shall also give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

c. In the event of any such conveyance, Owner Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be the responsibility of Owner Settling Defendant. In no event shall the conveyance release or otherwise affect the liability of Owner Settling Defendant to comply with all provisions of this

-12-

Consent Decree, absent the prior written consent of EPA.

## VI. **PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS**

11.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendants pursuant to

Sections VI (Performance of the Work by Settling Defendants), VIII (Quality Assurance,

Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall

continue to be under the direction and supervision of the existing Supervising Contractor. The

Settling Defendants have selected Progressive Engineering & Construction, Inc., who has been

previously approved by EPA, as the Supervising Contractor. If , Settling Defendants at any time

propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA

and must obtain an authorization to proceed from EPA before the new Supervising Contractor

performs, directs, or supervises any Work under this Consent Decree. EPA will issue a notice of

disapproval or an authorization to proceed. Within 10 days of EPA's approval of a new

Supervising Contractor, Settling Defendants shall demonstrate that the Supervising Contractor

has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines

for Quality Systems for Environmental Data Collection and Environmental Technology

Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed

contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with

"EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March

2001) or equivalent documentation as determined by EPA.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling

Defendants in writing. Settling Defendants shall then submit to EPA a list of contractors,

-13-

including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from the list that is not disapproved and shall notify EPA of the name of the contractor selected within twenty-one (21) days of EPA's authorization to proceed.

    c.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Section and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure).

    12.     Performance of Work

    Within 60 days after lodging this Consent Decree, the Settling Defendants shall submit a Work Plan for Completion of the Work which is consistent with the ROD and ESD. Upon its approval by EPA, the Work Plan for Completion of the Work, as well as other documents required pursuant to the Consent Decree and SOW, shall be incorporated into and become an enforceable part of this Consent Decree. The Settling Defendants shall implement the EPA-approved Work Plan, and other EPA-approved documents required pursuant to this Consent Decree and SOW. The Settling Defendants shall submit to EPA and MDEQ all plans, submittals and other deliverables required under this Consent Decree (including Section XI, EPA Approval of Plans and Other Submissions), in accordance with the schedule in this Consent Decree, and in the approved Work Plan and subsequent documents submitted in accordance with the Consent Decree and Work Plan. Any design documents submitted and approved by EPA under the

-14-

UAOs are considered part of this Consent Decree.

13. The Settling Defendants shall continue to implement the Work and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

14. Technical Impractibility.

a. Petition. For purposes of this Consent Decree and the Work, the Settling Defendants may petition EPA to modify or waive compliance with one or more of the Performance Standards for the contaminants of concern listed in the ESD for the Annex soils or groundwater extraction system, or the Paint Shop soils or groundwater extraction system or the dual blocking well groundwater system based on a demonstration that it is technically impracticable, from an engineering perspective, to attain those Performance Standards. The determination of whether attainment of a particular Performance Standard is technically impracticable will be made by EPA, and will be based on the engineering feasibility and reliability of the remedy. EPA will consider a petition for a waiver of Performance Standards on technical impracticability grounds only after the groundwater or soil remedy has been functioning and operational for a sufficiently long time period to make reliable predictions concerning its ability to achieve the Performance Standard. Settling Defendants' petition shall include: (a) an identification of the Performance Standard(s) for which a modification is sought; (b) a detailed justification setting forth the technical basis for the claim that it is technically impracticable to achieve the Performance Standard(s) through groundwater remediation or soil treatment, based on data from the Work and any other relevant information; (c) proposed alternative performance standard(s); and (d) a demonstration that the Work and/or any alternative performance

-15-

standard(s) at the Site, together with any additional response actions taken or proposed to be taken by Settling Defendants in the petition, will attain overall protection of human health and the environment and the other Performance Standards for the Annex or Paint Shop.

     b.    Determination. Based on its review of the petition and the supporting documentation submitted by Settling Defendants pursuant to Paragraph 14.a above and other relevant information, and after notice and an opportunity for the State to review and comment on any proposed modification/waiver under this Paragraph, EPA will determine whether to modify any Performance Standard and will identify any new Performance Standard to be attained. The determination shall be made in accordance with all applicable laws and regulations in effect at the time of the petition. Any alternative Performance Standards selected by EPA pursuant to this Paragraph shall meet the requirements of CERCLA and the NCP, including protection of human health and the environment. If EPA grants any petition or other relief pursuant to this Section, that decision will be reflected in a post-ROD decision document, as required by the NCP. If modification of this Consent Decree or the SOW is required to implement EPA's decision, such modification will be filed and, if necessary, court approval will be sought in accordance with Section XXXI of this Consent Decree ("Modification"). Upon issuance of EPA's post-ROD decision document, filing of the revised Statement of Work and Consent Decree with the Court and, if necessary, issuance of a court order approving the modification, Settling Defendants shall implement the modifications selected by EPA relating to groundwater or soil contamination, and achieve and maintain all Performance Standards, and other remediation requirements established pursuant to this Section. Unless expressly modified by EPA's decision on the petition submitted hereunder, all requirements of this Consent Decree shall continue in force and effect. If EPA

-16-

fails to provide a written determination within 120 days of the receipt of Settling Defendants' petition, the petition shall be considered denied, unless EPA and Settling Defendants agree in writing to extend this period.

    c.    Review. Settling Defendants may challenge EPA's determination under Paragraph 14.b above in accordance with the Dispute Resolution provisions in Section XIX of this Consent Decree.

    d.    Periodic Review. Any technical impracticability waiver granted pursuant to this Paragraph shall be subject to the provisions of Section VII of this Consent Decree (Remedy Review) and Section 121(c) of CERCLA, 42 U.S.C. § 9621(c).

    15.    Modification of the SOW or Related Work Plans.

    a.    If EPA determines that modification to the Work specified in the SOW and/or in other work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards, or to carry out and maintain the effectiveness of the remedy set forth in the ROD and ESD, EPA may require that such modification be incorporated in the attached SOW and/or such other plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD and ESD.

    b.    For the purposes of this Paragraph 15 and Paragraphs 51 and 52 only, the "scope of the remedy selected in the ROD and the ESD" is implementation of the following actions to meet the objectives set forth in the ROD and ESD: a dual blocking well system designed to protect the City of Battle Creek water supply from contamination from the three source areas; a groundwater capture and cleanup system for the Annex; a groundwater capture and cleanup

-17-

system for the Paint Shop using the southern blocking well line; treatment, if required, of all of the foregoing extracted groundwater to meet NPDES permit discharge requirements; groundwater monitoring; soil sampling; and remediation of source area soils for volatile organic compounds at the Paint Shop and Annex.

c.     If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.     Settling Defendants shall implement any Work required by any modifications incorporated in the SOW and/or in other work plans developed pursuant to the SOW in accordance with this Paragraph.

e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

16.     No Warranty.

Settling Defendants acknowledge and agree that nothing in this Consent Decree or the SOW constitutes a warranty or representation of any kind by Plaintiff that compliance with the Work set forth in the SOW and the Work Plans will achieve the Performance Standards.

17.     Off-Site Shipments.

a.     Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall

-18-

not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1) The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2) The identity of the receiving facility and state will be determined by the Settling Defendants at least fourteen (14) days before shipment. The Settling Defendants shall provide the information required by Paragraph 17.a. as soon as the receiving facility is identified.

b. Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-Site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REMEDY REVIEW

18.     Periodic Review.

Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human

-19-

health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

19. EPA Selection of Further Response Actions.

If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

20. Opportunity To Comment.

Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

21. Settling Defendants' Obligation To Perform Further Response Actions.

If EPA selects further response actions for the Site the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraphs 85 and 86 are satisfied. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraphs 85 and 86 are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, (3) EPA's selection of the further response actions or (4) the need for additional studies and investigations pursuant to Paragraph 19. Disputes pertaining to the whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 69.

-20-

## 22. Submissions of Plans.

If Settling Defendants are required to perform the further response actions pursuant to Paragraph 21, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

23. Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all Environmental Monitoring in accordance with "EPA Requirements for Quality Assurance Project Plans for Environmental Data Operation," (EPA QA/R5) (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998) and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notice. The Parties agree that the QAPP dated December 2003 is approved as being consistent with the aforementioned guidance. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP, and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Settling Defendants shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of environmental samples taken pursuant to this Consent Decree perform all

-21-

analyses according to accepted EPA methods. Accepted EPA methods are identified in the EPA-approved QAPP. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

24. Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. Inclusion of sampling schedules in Monthly Progress Reports or in accordance with permit requirements shall be deemed notice to the EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

25. Settling Defendants shall submit to EPA one copy of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

26. Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

-22-

## IX. ACCESS AND INSTITUTIONAL CONTROLS

27. If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a. commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

    (1)    Monitoring the Work;

    (2)    Verifying any data or information submitted to the United States;

    (3)    Conducting investigations relating to contamination at or near the Site;

    (4)    Obtaining samples;

    (5)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

    (6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

    (7)    Implementing the Work pursuant to the conditions set forth in Paragraph 89 of this Consent Decree;

    (8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

-23-

(9)   Assessing Settling Defendants' compliance with this Consent Decree; and

(10)  Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree; and

b.   commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree, but excluding from this prohibition all activities normally associated with railroad operations.

28.  The Settling Defendants have entered into agreements for access to certain property with Blue Diamond Owners, Consumers Power, the City of Battle Creek and Southern Livestock Exchange. If any other property where access and/or land/water use restrictions are needed to implement this Consent Decree is owned or controlled by persons other than any of the Settling Defendants or a party with whom the Settling Defendants have an access agreement covering such property, Settling Defendants shall use best efforts to secure from such persons:

a.   an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 27.a of this Consent Decree; and

b.   an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be

-24-

performed pursuant to this Consent Decree but excluding from this prohibition all activities normally associated with railroad operations.

29. For purposes of Paragraph 28 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access and/or land/water use restrictions. If any access or land/water use restriction agreements required by Paragraphs 28.a or 28.b of this Consent Decree are not obtained within 45 days of the date of EPA's determination that any such agreement is required to implement this Consent Decree, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 28 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, and/or land/water use restrictions, including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

30. If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the Work required by this Consent Decree to ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

31. Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use

-25-

restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any
other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

32. In addition to any other requirement of this Consent Decree, Settling Defendants
shall submit to EPA copies of written progress reports. Progress reports shall be submitted
monthly and shall cover a reporting period consisting of the prior month, unless EPA approves
less-frequent submissions covering longer reporting periods. Each progress report shall: (a)
describe the actions which have been taken toward achieving compliance with this Consent
Decree during the previous reporting period; (b) include a summary of all results of sampling
and tests and all other data received or generated by Settling Defendants or their contractors or
agents during the previous reporting period including a summary of groundwater extraction
rates, down times, and operational problems and operation and maintenance records; (c) identify
all work plans, plans and other deliverables required by this Consent Decree completed and
submitted during the previous reporting period; (d) describe all actions, including, but not limited
to, data collection and implementation of work plans, which are scheduled for the next upcoming
period of time equal to one and one-half times the reporting period and provide other information
relating to the progress of construction, including, but not limited to, if appropriate, critical path
diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of
completion, unresolved delays encountered or anticipated that may affect the future schedule for
implementation of the Work, and a description of efforts made to mitigate those delays or
anticipated delays; (f) include any modifications to the work plans or other schedules that
Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe

-26-

all activities undertaken in support of community relations work during the previous reporting period and those to be undertaken in the next period of time equal to one and one-half times the reporting period. Settling Defendants shall submit these progress reports to EPA by the 10th day of each month in which the progress reports are due, or on such other dates allowed by EPA if EPA approves less than monthly reporting, following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant to Paragraph 52.b of Section XIV (Certification of Completion). If requested by EPA, Settling Defendants shall also provide briefings for EPA to discuss the progress of the Work.

33. The Settling Defendants shall notify EPA of any change in the schedule described in the progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

34. Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally or by email/voice mail message notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

35. Within twenty (20) days of the onset of such an event, Settling Defendants shall

-27-

furnish to EPA a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

36. Settling Defendants shall submit one (1) copy of all plans, reports, and data required by the SOW, or any other approved plans to EPA and one copy to MDEQ in accordance with the schedules set forth in such plans. However, the Settling Defendants shall submit additional copies upon request by the Project Coordinator. Upon request by EPA Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

37. All reports and other documents submitted by Settling Defendants to EPA (other than the progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

38. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to

-28-

cure within 30 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

39. In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 38.a, 38.b, or 38.c, Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 38.c and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

40. Resubmission of Plans.

a. Upon receipt of a notice of disapproval pursuant to Paragraph 38.d, Settling Defendants shall, within twenty-one (21) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the twenty-one (21) day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 41 and 42.

b. Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 38(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by

-29-

any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

41. In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

42. If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during dispute resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

43. All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be

-30-

enforceable under this Consent Decree.

44. If in spite of EPA approval of design documents and proper construction, operation and maintenance of the system, EPA finds that the remedial action is not achieving the Performance Standards, including capture of contaminated groundwater at the Annex and Paint Shop, EPA will issue a deficiency notification to the Settling Defendants. Within 60 days of receipt of this notification, the Settling Defendants shall submit a plan to achieve the Performance Standard(s) that were identified as deficient. Settling Defendants shall implement any such plan, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

## XII. PROJECT COORDINATORS

45. Within 20 days of lodging this Consent Decree, Settling Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

46. Plaintiff may designate other representatives, including, but not limited to, EPA

-31-

employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

47. Within 30 days of entry of this Consent Decree, Settling Defendants shall establish and maintain financial security in the amount of $8.2 million in one or more of the following forms:

a. A surety bond guaranteeing performance of the Work;

b. One or more irrevocable letters of credit equaling the total estimated cost of the Work;

c. A trust fund;

d. A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with at least one of the Settling Defendants;

e. A demonstration that one or more of the Settling Defendants satisfy the requirements of 40 C.F.R. Part 264.143(f).

48. If the Settling Defendants seek to demonstrate the ability to complete the Work

-32-

through a guarantee by a third party pursuant to Paragraph 47.d of this Consent Decree, Settling Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 47.d or 47.e, they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 47 of this Consent Decree. Settling Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

49. If Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 47 above after entry of this Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA. In the event of a dispute, Settling Defendants may reduce the amount of the security only in accordance with the final administrative or judicial decision resolving the dispute.

50. Settling Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of

-33-

assurance meets the requirements of this Section. In the event of a dispute, Settling Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

51. Completion of the Remedial Action.

a. Within 90 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within 30 days of the inspection. In the report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing

-34-

(Covenants Not to Sue by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

52. Completion of the Work.

a. Within 90 days after Settling Defendants conclude that all phases of the Work (including O&M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official for a Settling Defendant or the Settling Defendants' Project Coordinator:

To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent

-36-

with the "scope of the remedy selected in the ROD and ESD," as that term is defined in Paragraph 15.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV. EMERGENCY RESPONSE

53. In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 54, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 5. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the existing or revised Health and Safety Plans, the contingency plans, and any other applicable plans or documents developed pursuant to

-37-

the SOW. In the event that Settling Defendants fail to take appropriate response action as
required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse
EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI
(Reimbursement of Response Costs).

54. Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to
limit any authority of the United States (a) to take all appropriate action to protect human health
and the environment or to prevent, abate, respond to, or minimize an actual or threatened release
of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order
from the Court, to protect human health and the environment or to prevent, abate, respond to, or
minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to
Section XXI (Covenants Not to Sue by Plaintiff).

## XVI. REIMBURSÉMENT OF RESPONSE COSTS

55.     Payments for Past Response Costs.

a.      Within 30 days of the Effective Date, Settling Defendants shall pay to EPA
$40,000 in payment for Past Response Costs incurred at the Raymond Road portion of the Site.
Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of
Justice account in accordance with current EFT procedures, referencing USAO file number
_____, the EPA Region and Site/Spill ID #05-51, and the DOJ case number 90-11-2-739.
Payment shall be made in accordance with instructions provided to the Settling Defendants by
the Financial Litigation Unit of the United States Attorney's Office for the Western District of
Michigan following lodging of the Consent Decree. Any payments received by the Department
of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

-38-

b. At the time of payment, Settling Defendants shall send notice that payment has
been made to the United States, to EPA and to the Regional Financial Management Officer, in
accordance with Section XXVI (Notices and Submissions). The total amount to be paid by
Settling Defendants pursuant to Subparagraph 55.a shall be deposited in the EPA Hazardous
Substance Superfund.

56. Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with
the National Contingency Plan. On a periodic basis the United States will send Settling
Defendants a bill requiring payment that includes an itemized cost summary which includes a
summary of direct and indirect costs incurred by EPA, and a DOJ-prepared cost summary which
reflects costs incurred by DOJ, if any. Settling Defendants shall make all payments within 30
days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided
in Paragraph 57. The Settling Defendants shall make all payments required by this Paragraph by
certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund"
and referencing the EPA Region and Site/Spill ID #05-51, the DOJ case number 90-11-2-739.
The Settling Defendants shall send the check(s) to:

> United States Environmental Protection Agency
> Region 5
> P.O. Box 70753
> Chicago, IL 60673

and shall send copies of the check(s) to the United States as specified in Section XXV (Notices
and Submissions). At the time of payment, Settling Defendants shall send notice that payment
has been made to the United States, to EPA and to the Regional Financial Management Officer,
in accordance with Section XXVI (Notices and Submissions).

-39-

57. Settling Defendants may contest payment of any Future Response Costs under Paragraph 56 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30-days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 30-day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 56. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Michigan and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the dispute resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sum due (with accrued interest) to the United States in the manner described in Paragraph 56. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which

-40-

they did not prevail to the United States in the manner described in Paragraph 56; Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

58. In the event that the payments required by Paragraph 56 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 74. The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 56.

## XVII. INDEMNIFICATION AND INSURANCE

59. Settling Defendants' Indemnification of the United States.

a. The United States does not assume any liability by entering into this Consent Degree or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors,

employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out the Work pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States.

    b.    The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 59, and shall consult with Settling Defendants prior to settling such claim and shall permit Settling Defendants to defend such claims, rather than settle them, provided that the Settling Defendants agree in writing to be responsible for all judgments entered thereafter.

    60.  Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants

-42-

shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

61. No later than 15 days before commencing any on-Site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion pursuant to Subparagraph 52.b of Section XIV (Certification of Completion) comprehensive general liability insurance with limits of one million dollars, combined single limit, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States as an additional insured. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

-43-

## XVIII. FORCE MAJEURE

62. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

63. If any event occurs or has occurred that may materially delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within five days of when Settling Defendants first knew that the event might cause a delay. Within 10 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such

-44-

delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew.

64. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

65. If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice pursuant to Paragraph 64. In any such proceeding, Settling Defendants shall have the

-45-

burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 62 and 63, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

66. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

67. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 28 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other party a written Notice of Dispute.

68. Statements of Position

a. In the event that the Parties cannot resolve a dispute by informal dispute resolution under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 21 days after the conclusion of the informal negotiation period, Settling

-46-

Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 69 or Paragraph 70.

     b.     Within 15 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 69 or 70. Within 15 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

     c.     If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 69 or 70, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

     69. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action

includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's or ESD's provisions.

a.  An administrative record of the dispute shall be maintained by EPA and shall contain the Formal Notice of Dispute, all Statements of Position, including supporting documentation submitted by the Parties pursuant to this Section, all documentation in the complete Administrative Record for the Site referenced by the Parties, and any other material on which the EPA decision-maker relies for the administrative decision provided for below. The administrative record shall be available for inspection and copying by all Parties. The administrative record shall be closed no less than 10 days before the administrative decision is made. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.  The Director, Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 69.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 69.c and d.

c.  Any administrative decision and order made by EPA pursuant to Paragraph 69.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on the other party within 28 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the

-48-

efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to such motion.

   d.     In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 69.a.

   70. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

   a.     Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 68, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendants unless, within 28 days of receipt of the decision, the Settling Defendants file with the Court and serve on the other party a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

   b.     Notwithstanding Paragraph M of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

-49-

71. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree not directly in dispute unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 80. Notwithstanding the stay of payment, stipulated penalties, if any, shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

72. Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73. Penalties

a. The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 73.b.:

Penalty Per Violation Per Day      Period of Noncompliance

-50-

| $ 1,000 | 1st through 14th day |
| $ 1,500 | 15th through 30th day |
| $ 2,500 | 31st day and beyond |

b. Compliance Milestones.

(i). Complete construction and initiate operation of the upgraded Annex and Paint Shop groundwater extraction systems to assure containment of source areas in accordance with the schedule set forth in the SOW or other EPA-approved document.

(ii). Implement plan to achieve soil performance standards at the Annex and Paint Shop in accordance with any schedule in the SOW or EPA-approved document.

(iii). Respond, in accordance with schedules provided in the Operation & Maintenance Manual or the contingency plan, to mechanical or maintenance problems that result in: total or partial shut-down of the groundwater extraction system; reductions in normal operating extraction rate of more than 20% for the system or part of the system ; or reductions in extraction rates of more than 20% of design rate from individual blocking or extraction wells

74. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate annual reports pursuant to the requirements of this Consent Decree or SOW, or for failure to timely make payments in accordance with Paragraphs 55 and 56 above.

| Penalty Per Violation Per Day | Period of Noncompliance |
| $ 300 | 1st through 14th day |
| $ 700 | 15th through 30th day |
| $ 1,500 | 31st day and beyond |

75. In the event that EPA assumes performance of a portion or all of the Work pursuant

-51-

to Paragraph 89 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Defendants shall be liable for a stipulated penalty in the amount of $450,000. The stipulated penalty described in this paragraph is separate from and in addition to any other costs of response and other stipulated penalties set forth in this Section XX (Stipulated Penalties).

76. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 69.b or 70.a., Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

77. Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send the Settling Defendants a written

-52-

demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

78. All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the dispute resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to United States Environmental Protection Agency, Region 5, P.O. Box 70753, Chicago, IL, 60673, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID # 0551, the DOJ Case Number 90-11-2-739, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions), and to EPA's Project Coordinator.

79. The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

80. Penalties shall continue to accrue as provided in Paragraph 76 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 30 days of the agreement or the receipt of EPA's decision or order;

b. If the dispute is appealed to this Court and the United States prevails in whole or

-53-

in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Paragraph 80.c below;

c.    If the District Court's decision is appealed by any party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

81.    If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 78.

82.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA. Provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

83.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to

-54-

this Consent Decree

## XXI. COVENANTS NOT TO SUE BY PLAINTIFF

84. In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 85, 86, and 88 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 55 of Section XVI (Payments for Past Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 51.b of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants, and do not extend to any other person.

85. <u>United States' Pre-certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

    a.    to perform further response actions relating to the Site, or

    b.    to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

        1.    conditions at the Site, previously unknown to EPA, are discovered, or

-55-

2. information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

86. United States' Post-certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

a. to perform further response actions relating to the Site, or

b. to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

1. conditions at the Site, previously unknown to EPA, are discovered, or

2. information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

87. For purposes of Paragraph 85 the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ESD was signed, and set forth in the ROD, the administrative record supporting the Record of Decision or the post-ROD administrative record through the date the ESD was signed. For purposes of Paragraph 86 the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of

-56-

the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

88. General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a. claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability arising after signature of this Consent Decree by the Settling Defendants based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the ESD, the Work, or otherwise ordered by EPA;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e. criminal liability;

f. liability for violations of federal or state law which occur during or after

-57-

implementation of the Remedial Action;

g. liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 15 (Modification of the SOW or Related Work Plans); and

h. liability for costs that the United States will incur related to the Site but are not within the definition of Future Response Costs.

89. Work Takeover. In the event EPA determines that Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Reimbursement of Response Costs).

90. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

91. The Settling Defendants specifically withdraw any and all prior objections to the UAOs, and waive any and all future objections to the UAOs, including specifically, but without limitation, the objection that the UAOs are arbitrary and capricious, that they fail to allege a

-58-

prima facie basis for liability, that they violate the separation of powers doctrine and that there is no authority in CERCLA to impose the UAOs' requirements.

92. Covenant Not to Sue. Subject to the reservations in Paragraph 93, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions at the Site, actions relating to or implementing the UAOs, Past Response Costs and Future Response Costs as defined herein, or this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law,

b. any claims against the United States, including any department, agency or instrumentality of the United States, under CERCLA Sections 107 or 113 related to the Site, or

c. any claims arising out of response activities at the Site, including claims under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 95 (Waiver of Claims Against De Micromis Parties), Paragraph 96 (Waiver of Claims Against *De Minimis* Parties), and Paragraph 101 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 85, 86, 88.b - 88.d or 88.g - 88.h, but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is

-59-

seeking pursuant to the applicable reservation.

93. The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

94. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

95. Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of

-60-

hazardous substances at the Site, if the materials contributed by such person to the Site

containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of

waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials. This

waiver shall not apply to any claim or cause of action against any person meeting the above

criteria if EPA has determined that the materials contributed to the Site by such person

contributed or could contribute significantly to the costs of response at the Site. This waiver also

shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant

may have against any person if such person asserts a claim or cause of action relating to the Site

against such Settling Defendant.

96. Settling Defendants agree not to assert any claims and to waive all claims or causes

of action that they may have for all matters relating to the Site, including for contribution, against

any person that has entered into a final CERCLA § 122(g) *de minimis* settlement with EPA with

respect to the Site as of the Effective Date. This waiver shall not apply with respect to any

defense, claim, or cause of action that a Settling Defendant may have against any person if such

person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

97. Except as provided in Paragraph 95 (Waiver of Claims Against De Micromis Parties)

and Paragraph 96 (Waiver of Claims Against *De Minimis* Parties), nothing in this Consent

Decree shall be construed to create any rights in, or grant any cause of action to, any person not a

party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify

any rights that any person not a signatory to this decree may have under applicable law. Except

as provided in Paragraph 95 (Waiver of Claims Against De Micromis Parties) and Paragraph 96

-61-

(Waiver of Claims Against *De Minimis* Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a party hereto.

98. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. "Matters addressed" in this Consent Decree means the Work as defined herein, as well as Past and Future Response Costs incurred by the United States in connection with the Site.

99. The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

100. The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States within 14 days of service of the complaint on them. In addition, Settling Defendants shall notify the United States within 14 days of service or receipt of any motion for summary judgment and within 14 days of receipt of any order from a court setting a case for trial.

101. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the

-62-

principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV. ACCESS TO INFORMATION

102. Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

103.    Business Confidential and Privileged Documents

a.      Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of

-63-

Section 104(e)(7) of CERCLA, the public may be given access to such documents or information without further notice to Settling Defendants.

b. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

104. No claim of confidentiality or privilege shall be made with respect to any data, including but not limited to any sampling, analytical, monitoring, hydrogeological, sediment, chemical, biological, or engineering data, or any factual portions of documents or information evidencing physical conditions at or around the Site; provided that Settling Defendants may assert work product or attorney-client privilege with respect to documents which contain such data or information so long as they have submitted or simultaneously submit to EPA the data or other factual portions of such documents evidencing physical conditions at or around the Site.

## XXV. RETENTION OF RECORDS

105. Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 52.b. of Section XIV (Certification of Completion of the Work), each Settling

-64-

Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary. These requirements may be met by the establishment of a common record depository maintained by Settling Defendants containing each Settling Defendant's records and documents.

106. At the conclusion of this document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, they shall

-65-

provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

107. Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. NOTICES AND SUBMISSIONS

108. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent

-66-

Decree with respect to the United States, EPA, and the Settling Defendants, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-2-739

As to EPA:

Richard Boice (SR-6J)
EPA Project Coordinator
United States Environmental Protection Agency Region 5
Chicago, IL 60604
Phone: (312)886-4740
Fax: (312)886-4071

As to the Settling Defendants:

Bridget Morello
Settling Defendants' Project Coordinator
Progressive Engineering & Construction, Inc.
3912 W. Humphrey Street
Tampa, Florida 33614
Phone: (813) 930-0669
Fax: (813) 930-9809

R. Craig Hupp, Common Counsel
Bodman, LLP
34th Floor
100 Renaissance Center
Detroit, Michigan 48243
Phone: (312) 259-7777
Fax: (313) 393-7579

Mary Sclawy, Esq.
Counsel for Grand Trunk Western Railroad Incorporated
Of Counsel
Fabrizio & Brook, P.C.
City Center Building
888 West Big Beaver

-67-

Suite 1470
Troy, Michigan 48084
Phone: (248) 362-2600
Fax: (248) 362-3610

Dustin P. Ordway. Esq.
Miller, Johnson, Snell & Cummiskey, PLC
250 Monroe Avenue. NW
Suite 800
PO Box 306
Grand Rapids, Michigan 49501
Phone: (616) 831-1700
Fax: (616) 988-1706

109. The Settling Defendants shall provide verbal notification to EPA's Project
Coordinator identified above at least 28 days prior to conducting any soil or ground water
sampling that may be used to document shut-down or completion of a portion of the Work,
including the soil sampling for VOCs in the Soil Cleanup Verification Sampling
Plan and ground water sampling in accordance with the Proposal for Closure Demonstration
Sampling (see SOW).

110. In its progress reports, the Settling Defendants shall provide notifications
to EPA of any planned shut-downs of the blocking well system for maintenance or other
reasons. The Settling Defendants shall provide EPA and MDEQ with verbal notification within
24 hours of any unplanned shut-downs of the blocking well systems. The notification
will include a description of the cause of the shut-down, what corrective actions are
being taken, and the expected time when operation will resume.

## XXVII. EFFECTIVE DATE

111. The effective date of this Consent Decree shall be the date upon which this Consent
Decree is entered by the Court, except as otherwise provided herein.

-68-

## XXVIII. RETENTION OF JURISDICTION

112. This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

113. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.
"Appendix B" is the ESD.
"Appendix C" is the SOW.
"Appendix D" is a map of the source areas at the Site.

## XXX. COMMUNITY RELATIONS

114. Settling Defendants shall propose to EPA their participation in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Defendants under the Plan. Settling Defendants shall cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

115. Schedules specified in this Consent Decree or the SOW for completion of the Work

-69-

may be modified by agreement of EPA and the Settling Defendants. All such modifications shall be made in writing.

116. Except as provided in Paragraph 15 (Modification of the SOW or related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(ii)(B). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification. Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(ii)(B), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

117. Except as provided in Paragraphs 115 and 116, there shall be no material modification to this Decree without written agreement of all parties and approval of the Court. Non-material modifications may be made by written agreement of the parties and shall be filed with the Court. Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

118. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right

-70-

to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

119. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. SIGNATORIES/SERVICE

120. Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

121. Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

122. Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The Parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the

-71-

Court expressly declines to enter this Consent Decree.

## XXXIV. FINAL JUDGMENT

123. This Consent Decree and its appendices constitute the final, complete, and
exclusive agreement and understanding among the Parties with respect to the settlement
embodied in the Consent Decree. The Parties acknowledge that there are no representations,
agreements or understandings relating to the settlement other than those expressly contained in
this Consent Decree.

124. Upon approval and entry of this Consent Decree by the Court, this Consent Decree
shall constitute a final judgment between and among the United States and the Settling
Defendants. The Court finds that there is no just reason for delay and therefore enters this
judgment as a final judgment under Fed. R. Civ. P. 54.

SO ORDERED THIS 5th DAY OF October, 2005

/s/Gordon J. Quist

Hon. Gordon J. Quist
United States District Judge

-72-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Western Railroad Incorporated, et al relating to the Verona Well Field Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

_____
Date

Kelly A. Johnson
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

9/28/05
Date

Leslie Lehnert
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20530-7611

9/29/05
Date

W. Francesca Ferguson
Assistant United States Attorney
Western District of Michigan
U.S. Department of Justice

-73-

THE UNDERSIGNED PARTY enters into this
Consent Decree in the matter of United States v.
Grand Trunk Railroad Co., et al relating to the
Verona Well Field Superfund Site.

5-19-05

Date

Richard C. Karl, Director
Superfund Division
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604

-74-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: April 21, 2005

HLI Operating Company, Inc.

Name of Settling Defendant
(f/k/a Motor Wheel Corporation)

15300 Centennial Drive, Northville, MI 48167
Address

734.737.5080

Telephone Number

Patrick C. Cauley
Name of Officer

Signature of Officer

Vice President, General Counsel & Secretary
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                       Attorney

Name                                    Name

Address                                 Address

                                        Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v.
Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

*WESTERN* *INC.*

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: *Sept 30/04*

*GRAND TRUNK WESTERN RAILROAD INC.*
Name of Settling Defendant
*% CANADIAN NATIONAL RAILWAY COMPANY*
*935 de La Gauchetière St. WEST, FLOOR 15*
Address *MONT REAL, QUEBEC H3B 2M9*

*514. 399. 7400*
Telephone Number

*N. PELLERIN*
Name of Officer

Signature of Officer

*AVP Environment*
Title

If different from above, the following is the name and address of Settling Defendant's agent for
service and the name and address of Settling Defendant's counsel. Counsel may act as agent for
service.

Agent for Service

*MARY P SCLAWY*
Name

Address

Attorney

*MARY P. SCLAWY*
Name
*888 W. BIG BEAVER, #1470*
*TROY, MI 48084*
Address
*248. 362. 2600*
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the
identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for signature line for Officer)

Date:  9|28|04

Kraft Foods Global, Inc. (f/k/a Kraft Foods North America, Inc., f/k/a General Foods Corporation)
Name of Settling Defendant
Three Lakes Drive
Northfield, Illinois  60093
Address

847-646-7226
Telephone Number

William F. Pell, III
Name of Officer

Signature of Officer

Assistant Secretary
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Same as attorney
Name


Address

Attorney

Thomas M. Giller
Name
Three Lakes Drive
Northfield, IL  60093
Address
847-646-8524
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: October 8, 2004

Emhart Industries, Inc.
Name of Settling Defendant

701 East Joppa Road
Towson, MD 21286
Address

(410) 716-3208
Telephone Number

Linda H. Biagioni
Name of Officer

*Linda H. Biagioni*
Signature of Officer

Vice President
Title

If difference from above, the following is the name and address of Settling Defendant's agent for Service and the name and address of Settling Defendant's counsel. Counsel may act as agent for Service.

Agent for Service

Laura Ford Brust
Name

Swidler Berlin Shereff Friedman
3000 K Street, N.W., Suite 300
Washington DC 20007
Address

Attorney

Laura Ford Brust
Name

Swidler Berlin Shereff Friedman
3000 K Street N.W., Suite 300
Washington, DC 20007
Address

202-424-7861
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

- 75 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for signature line for Officer)

Date: January 30, 2005

Hoover Group, Inc. (as successor entity to Hoover Universal, Inc. )
Name of Settling Defendant

12725 Morris Road, Suite 310 Alpharetta, GA 30004

Address

770-664-2850

Telephone Number

Ernest Mathia

Name of Officer

Signature of Officer

President

Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

Name

Name

Address

Address

Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: 9/17/04

The O'Brien Corporation

Name of Settling Defendant

PO Box 4060

Address South Bend, IN 46634-4060

574-210-9077

Telephone Number

Jerome J. Crowley, Jr.

Name of Officer

Signature of Officer

Authorized Officer

Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                     Attorney

Thomas F. Karaba                      Thomas F. Karaba
Name                                  Name

20 S. Clark Street, Suite 2310, Chicago, IL 60603
Address                               Address
                                      312-726-2468
                                      Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS

(Please type or print, except for signature line for Officer)

Date: October 6, 2004

Bayer CropScience Inc. (formerly known as Aventis CropScience USA Inc., corporate successor to Stauffer Chemical Company)

Name of Settling Defendant

1800 Concord Pike, P. O. Box 15437
Wilmington, DE  19850-5437

Address

(302) 886-3690

Telephone Number

Luke W. Mette

Name of Officer

Signature of Officer

Vice President & General Counsel of Stauffer Management LLC, as litigation agent for Bayer CropScience Inc.

Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                    Attorney

_____              _____

Name                                 Name

_____              _____

Address                              Address

                                     _____

                                     Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: __September 27, 2004__    __General Electric Company- Corporate Environmental__
    Name of Settling Defendant            **Programs**

    __320 Great Oaks Blvd., Suite 319, Albany, NY 12203__
    Address

    __(518) 862-2700__
    Telephone Number

    __Paul Wm. Hare__
    Name of Officer

    __[signature]__
    Signature of Officer

    __Manager, Northeast/Midwest Regions__
    Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                Attorney

__See Counsel for Agent__        __Michael S. Elder, Esq.__
Name                            Name
                                GE-CEP
                                __320 Great Oaks Blvd., Suite 319, Albany, NY 12203__
Address                          Address
                                __(518) 862-2700__
                                Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: 12/7/04

Fort James Operating Company
Name of Settling Defendant

133 Peachtree St., Atlanta, GA 30305
Address

404 - 652 - 4662
Telephone Number

Kenneth F. Khoury
Name of Officer

Signature of Officer

Vice President, Deputy General Counsel
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

Name

Name

Address

Address

Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: 11/30/04

ARKWRIGNT, INC
Name of Settling Defendant

538 MAIN STREET FISKEVILLE, RI 02823
Address

401-821-1000
Telephone Number

John R. Heath
Name of Officer

Signature of Officer

President
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

Name

Name

Address

Address

Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: _____

Eaton Corporation
Name of Settling Defendant

1111 Superior Ave., Cleveland, OH  44111
Address

216 523-5000
Telephone Number

Earl R. Franklin
Name of Officer

Signature of Officer

Vice President and Secretary
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

| Agent for Service | Attorney |
|---|---|
| Counsel to Act as Agent | John A. Ferroli |
| Name | Name Dykema Gossett PLLC |
| | 300 Ottawa Ave., NW, STE 700 |
| | Grand Rapids, MI  49503-2306 |
| Address | Address 616 776-7542 |
| | Telephone |

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: _9/29/04_

_TETRADYNE CORPORATION_
Name of Settling Defendant

_47603 HALYARD DRIVE_
Address

_(734) 207 - 6200_
Telephone Number

_R. JEFFREY POLLOCK_
Name of Officer

Signature of Officer

_SECRETARY_
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                    Attorney

Name                                 Name

Address                              Address

                                     Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: October 14, 2004

Rieke Corporation
Name of Settling Defendant

500 W. 7th Street, Auburn IN 46706
Address

(260) 925 -3700
Telephone Number

Benson K. Woo
Name of Officer

Signature of Officer

Vice President
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

John A. Ferroli, Esq.
Name
300 Ottawa Ave, NW, Suite 700
Grand Rapids, MI 49503-2306
Address

Attorney

John A Ferroli, Esq.
Name    Dykema Gossett PLLC
300 Ottawa Ave., NW, Suite 700
Grand Rapids, MI 49503-2306
Address
(616) 776-7500
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for signature line for Officer)

Date: *11/01/04*

*HONEYWELL INT'L*
Name of Settling Defendant

*101 COLUMBIA RD   MORRISTOWN, NJ 07962*
Address

*973. 455 - 4279*
Telephone Number

*TROY J. MEYER*
Name of Officer

*[signature]*
Signature of Officer

*REMEDIATION PORTFOLIO DIRECTOR*
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

**Agent for Service**

**Name**

**Address**

**Attorney**

*BRIAN D. ISRAEL*
Name *ARNOLD & PORTER*

*555 12th Street*
Address *Washington DC 20004*
*2029425546*
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: _____

THE LEISURE GROUP INC.
Name of Settling Defendant

445 S. FIGUEROA ST. #3250
Address LOS ANGELES CA 90071
(213) 624-2621
Telephone Number

ARTHUR E. LEACH
Name of Officer

_____
Signature of Officer

CORPORATE SECRETARY
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                    Attorney

_____              _____
Name                                 Name

_____              _____
Address                              Address

                                     _____
                                     Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: _OCTOBER 5, 2004_

_FORD MOTOR COMPANY_
Name of Settling Defendant
_THE AMERICAN ROAD,_
_DEARBORN, MICHIGAN 48126_
Address

_(See below)_
Telephone Number

_KATHRYN LAMPING_
Name of Officer

_[signature]_
Signature of Officer

_ASSISTANT SECRETARY_
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

_[signature]_
Name _Suite 1500 PTW_
_Three Parklane Blvd._
Address
_Dearborn, MI 48126_

Attorney

_[signature]_
Name _Suite 1500 PTW_
_Three Parklane Blvd._
_Dearborn, MI 48126_
Address
_(313) 594-1687_
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: 9/23/04

Ingersoll-Rand Co. on behalf g Clark Equipment Co.
Name of Settling Defendant

155 Chestnut Ridge Rd, Montvale, NJ 07645
Address

201-573-0123
Telephone Number

Patricia Nachtigal
Name of Officer

Signature of Officer

Chairman + President g Clark Equipment Co.
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

Name

Name

Address

Address

Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: _DEC 8, 2004_

_INX INTERNATIONAL INK CO,_
  _S/k/a ACME PRINTING INK COMPANY_

Name of Settling Defendant

_651 BONNIE LANE_

Address

_ELK GROVE VILLAGE, IL 60007_

Telephone Number

_(847) 290-0302_

Name of Officer

_ROBERT C. OSMUNDSEN_

Signature of Officer

Title _V. P, GENERAL COUNSEL AND_
  _SECRETARY_

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

_____

_____

Name

Name

_____

_____

Address

Address

_____

Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date:  9/23/04

Ferro Corporation
Name of Settling Defendant
1000 Lakeside Avenue
Cleveland, Ohio 44114
Address

216-875-6122
Telephone Number

James C. Bays
Name of Officer

Signature of Officer

Vice President & General Counsel
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

James M. Friedman

Name
Benesch, Friedlander, Coplan &
Aronoff LLP
2300 BP Tower, 200 Public Square
Address
Cleveland, OH 44114

Attorney

James M. Friedman

Name
Benesch, Friedlander, Coplan & Aronoff LLP
2300 BP Tower, 200 Public Square
Cleveland, OH 44114
Address
216-363-4663
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: October 20, 2004          Interkal, Inc.

Name of Settling Defendant
c/o UIS, Inc.
15 Exchange Place, Jersey City, NJ  07302-3912

Address

201-946-2600

Telephone Number

Andrew G. Pietrini

Name of Officer

Signature of Officer

President of UIS, Inc., as the alleged
Title    successor to certain liabilities of
         "Interkal" and Vecta"

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                Attorney

Michael B. Ortega, Esq.          Michael B. Ortega, Esq.
Name                             Name Lewis Reed & Allen P.C.
                                      136 East Michigan Ave., Suite 800
                                      Kalamazoo, MI   49007-3975

Address                          Address
                                 269-388-7600
                                 Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: October 4, 2004

Kysor Industrial Corporation
Name of Settling Defendant

2227 Welbilt Blvd., New Port Richey, FL 34655
Address

(727) 375-7010
Telephone Number

Irwin M. Shur
Name of Officer

Signature of Officer

Vice President and Secretary
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Michael V. Sucaet
Name

_____
Address

Attorney

Michael V. Sucaet
Name

800 West Long Lake Road Suite 200
Address                              Bloomfield Hills, MI
(248) 642-1920
Telephone                            48302

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: 11/24/04

_Acheson Industries, Inc_
Name of Settling Defendant

_1600 Washington Ave_
Address _Port Huron, MI 48070_
_810 984 5583 x 730_

Telephone Number

_Greg Kam_
Name of Officer

Signature of Officer

_VP Finance_
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service                    Attorney

                                     DANIEL P. KING
Name                                 Name
                                     4057 Pioneer Drive, Suite 300
                                     Commerce Township, MI  48390
Address                              Address
                                     (248) 363-6400
                                     Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

> FOR THE SETTLING DEFENDANTS
> (Please type or print, except for
> signature line for Officer)

Date: November 22, 2004

E. I. du Pont de Nemours and Company
Name of Settling Defendant
1007 Market Street, D-7090-2
Wilmington, DE 19898
Address

(302) 774-5113
Telephone Number

Guy V. Johnson
Name of Officer

Signature of Officer

Corporate Counsel
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

CT Corporation
Name
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

Address

Guy V. Johnson
Name
E. I. du Pont de Nemours and Company
1007 Market Street, D7090-2
Address Wilmington, DE 19898
(302) 774-5113
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

-75-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: Nov. 24, 2004

The Valspar Corporation
Name of Settling Defendant

1101 S. 3rd St., Minneapolis, MN 55415
Address

612-375-7705
Telephone Number

Rolf Engh
Name of Officer

Signature of Officer

Sr. VP, Secretary & Gen. Counsel
Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

Agent for Service

Attorney

Name

Ronda P. Bayer
Name

Address

1101 S. 3rd St., Minneapolis, MN 55415
Address
612-375-7306
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the identity or address of Settling Defendant, its agent for service, or its counsel.

Assistant United States Attorney
Western District of Michigan
U.S. Department of Justice
[Address]

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

Date

William E. Muno, Director
Superfund Division
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. _____, Civil Action No. ___ CV ___, relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: June 15, 2004

Paul R. Berry

Name of Settling Defendant on behalf of Bayer Corporation as successor to Miles, Inc.
400 Morgan Lane, West Haven, CT 06516
Address

203-812-6081

Telephone Number

Name of Officer

Signature of Officer
PAUL R. BERRY
VICE PRESIDENT
GENERAL COUNSEL AND SECRETARY

Title

If different from above, the following is the name and address of Settling Defendant's agent for service and the name and address of Settling Defendant's counsel. Counsel may act as agent for service.

44

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v.
Grand Trunk Railroad Co., et al relating to the Verona Well Field Superfund Site.

FOR THE SETTLING DEFENDANTS
(Please type or print, except for
signature line for Officer)

Date: 4/4/05

Tomkins Industries, Inc.
Name of Settling Defendant

6450 Poe Avenue, Suite 109, Dayton, OH 45414
Address

(937) 254-7316/7315
Telephone Number

Mildred P. Woryk
Name of Officer

Mild OP W
Signature of Officer

assistant secy
Title

If different from above, the following is the name and address of Settling Defendant's agent for
service and the name and address of Settling Defendant's counsel. Counsel may act as agent for
service.

Agent for Service

_____
Name

_____
Address

Attorney

Athan A. Vinolus
Name

6450 Poe Avenue, Suite 109, Dayton, OH 45414
Address
(937) 254-7316
Telephone

Each Settling Defendant shall notify the United States Department of Justice of any change in the
identity or address of Settling Defendant, its agent for service, or its counsel.

-75-